UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DMITRI ANDERSON,

                    Petitioner,                    Case No. 1:14-cv-169

v.                                                 Honorable Gordon J. Quist

SHERRY BURT,

                    Respondent.

_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Dmitri Anderson is incarcerated with the Michigan Department of Corrections at the Ionia Correctional Facility (ICF) in Ionia, Michigan. Following a jury trial in the Ottawa County Circuit Court, Petitioner was convicted of two counts of first-degree murder, Mich. Comp. Laws § 750.316, and one count of armed robbery, Mich. Comp. Laws § 750.529. Petitioner was convicted of first-degree murder on both theories presented by the prosecutor—premeditation and felony murder—as to both counts. On March 23, 2009, the court sentenced Petitioner to life imprisonment without eligibility for parole on the murder convictions and 37 years, 6 months to 56 years, 3 months for the armed robbery conviction.

On February 14, 2014, Petitioner filed his habeas corpus petition. Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). Petitioner placed his petition in the prison mailing system on February 14, 2014. (Pet., ECF No. 1, PageID.14.)

The petition identifies four grounds for relief, paraphrased as follows:

I.      Unfair trial, violation of due process.  Judge allowed the prosecutor to use a home invasion that was not connected to Petitioner in any way at Petitioner's murder trial.  This was done to connect Petitioner to a gun.  The prosecutor used testimony known to be perjured.

II.     Prosecutorial misconduct.  When detectives contacted my alibi witness and paid him to change his testimony to what detectives wanted him to say.  The prosecutor withheld exculpatory evidence that was revealed in the presentence investigation report.

III.    Insufficient evidence.  Nothing but speculation.  Nothing places Petitioner at this crime.  No witness places Petitioner at this crime on the day of the crime.

IV.     Ineffective assistance of counsel, trial and appellate.  Counsel did not prepare for trial and did not call witness Petitioner requested to be present.

(Pet., ECF No. 1, PageID.6-10.)  Respondent has filed an answer to the petition (ECF No. 8) stating that the grounds should be denied because they are meritless or relief is barred by Petitioner's procedural default.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are without merit or relief and is barred by the doctrine of procedural default.  Accordingly, I recommend that the petition be denied.

## Discussion

I.      Factual Allegations

At about 3:30 p.m., on July 2, 2008, Stephani Czadzeck returned from running errands to her job at her father's business, R&K Jewelry on Washington Street in Grand Haven, Michigan.  (Trial Tr. II, ECF No. 9-13, PageID.719-803.)  She found her father, Robert Karell, on the floor of his office in the back of the store.  (*Id*., PageID.759-760)  The safe in his office had been ransacked.  (*Id*., PageID.765-775.)  Robert Karell and an R&K customer, Lewis Paparella, had been shot in the back of the head.  (*Id*., PageID.692-693, 704-705.)  Both were dead.  (Trial Tr. I, ECF No. 9-12, PageID.640.)  The robbery likely occurred between approximately 3:00 and

2

3:30 p.m. that day.  (*Id.*, PageID.664-667; Trial Tr. II, ECF No. 9-13, PageID.756.)  There were no witnesses.

The investigators went to work.  They matched a fingerprint on a cigar box found in the office to Darick Anderson, Petitioner's brother.  (Trial Tr. II, ECF No. 9-13, PageID.853.) The investigation progressed.  Searches at Darick Anderson's house turned up items taken from R&K.  (*Id.*, PageID.859-863.)  They also turned up rolls of coins that had been taken in a home invasion a couple of days before the R&K robbery. (*Id.*; *see also* PageID.898-905.)  A Ruger 22 was stolen at the same time those coins were taken.  (*Id.*)  A Ruger 22 could have fired the bullets and casings found at R&K.  (Trial Tr. II, ECF No. 9-13, PageID.820-821.)

Because Petitioner's brother had been identified as a suspect, investigators also questioned Petitioner in a series of interviews.  (Trial Tr. III, ECF No. 9-14, PageID.1115.) Eventually, Petitioner disclosed that he had seen Darick in the evening on July 2 with lots of cash, a black box (one of the items taken from the safe), and a magazine from a handgun.  (Trial Tr. IV, ECF No. 9-17, PageID.1230-1268.)  Petitioner even told the police where Darick had disposed of the magazine.  (Trial Tr. III, ECF No. 9-14, PageID.1026.)  The magazine was no longer there, but police identified a maintenance worker who had seen and relocated the magazine.  (*Id.*, PageID.1026-1030.)  Petitioner also pointed police in the direction of a home where Petitioner thought Darick might have hidden the gun.  (Trial Tr. IV, ECF No. 9-17, PageID.1244-1245.) Police eventually found the gun buried in the backyard at that home.  (*Id.*)

Petitioner essentially acknowledged that his brother participated in the R&K robbery.  Petitioner just claimed he did not participate himself.  Investigators worked to pin down Petitioner's location at the time of the robbery.  Based on cell phone records and the testimony of Petitioner's wife and brother-in-law, investigators were able to put Petitioner at Darick's house at

some time after 2:00 p.m. on July 2.  (Trial Tr. III, ECF No. 9-14, PageID.1000-1018, 1069-1112; Trial Tr. IV, ECF No. 9-17, PageID.1272-1291, 1305-1309.)  At about that time, Petitioner's cell phone and Darick's cell phone became inactive for about eighty minutes, as if they had been turned off.  (Trial Tr. III, ECF No. 9-14, PageID.1102-1105.)  That window of time would have been enough to travel to Grand Haven and commit the murders and robbery.

Although Petitioner denied involvement in the robbery during his interviews with the police, he was more forthcoming with fellow inmates in county and state facilities where he was detained.  Two of Petitioner's former fellow inmates testified that Petitioner had confessed his involvement to them.  (Trial Tr. Excerpt-Testimony of Anthony Wright, ECF No. 9-15; Trial Tr. Excerpt-Testimony of Darnell Brown, ECF No. 9-16.)

With the wealth of evidence against Darick, the circumstantial evidence placing Petitioner with Darick, and Petitioner's own jailhouse confessions, the jury heard enough to convict Petitioner of first-degree murder and armed robbery.  (Trial Tr. V, ECF No. 9-18, PageID.1524-1526.)

Although not directly relevant to Petitioner's conviction or this petition, Darick Anderson was tried and convicted of the same charges two months after Petitioner.  *People v. Anderson*, No. 292072, 2010 WL 3984801 (Mich. Ct. App. Oct. 12, 2010).  Darick testified at his trial.  *Id*. at *1.  During his testimony, Darick admitted he buried the Ruger, he also admitted being present during the robbery, but he denied shooting the victims.  *Id*.  He refused to identify who else may have committed the crime or shot the victims and insisted that his brother was innocent.

Petitioner, with the assistance of counsel, directly appealed his convictions.  He raised one issue:

I.      The evidence was insufficient to prove Petitioner was present at the scene of the crimes.

Petitioner, dissatisfied with his appointed counsel, also filed a Standard 4 brief. Michigan Supreme Court Administrative Order 2004–6 sets forth minimum standards for indigent criminal appellate defense services, including the following:

> Standard 4
>
> When a defendant insists that a particular claim or claims be raised on appeal against the advice of counsel, counsel shall inform the defendant of the right to present the claim or claims in propria persona. Defendant's filing shall consist of one brief filed with or without an appropriate accompanying motion. Counsel shall also provide such procedural advice and clerical assistance as may be required to conform the defendant's filing for acceptability to the court. The defendant's filing in propria persona must be received by the Court of Appeals within 84 days after the appellant's brief is filed by the attorney. . . .

Mich. Admin. Order No. 2004–6. Petitioner's Standard 4 brief raised several new issues, paraphrased as follows:

> II.   Should the court appoint substitute appellate counsel due to a breakdown in the attorney-client relationship.
>
> III.   Petitioner was denied due process and a fair trial because the police and prosecutor focused their investigation seeking and gathering questionable evidence and overlooking competent evidence despite ethical requirements to the contrary.
>
> IV.   Petitioner was denied effective assistance of trial counsel due to multifaceted errors and omissions, including counsel's failure to investigate so as to learn that the prosecutor tended to withhold exculpatory evidence; counsel's failure to pursue leads provided by Petitioner; counsel's failure to "pose probative questions to skillfully unmask bias" and to "weigh the highly questionable evidence more carefully"; counsel's failure to seek a change of venue; counsel failed to seek discovery regarding Michigan State Police Crime Lab reports that disclosed biological material at the crime scene did not match Petitioner; counsel's failure to object to "Darick said" hearsay testimony; counsel's failure to discover a deal offered to witness David Jewel; counsel failed to call witnesses or effectively examine witnesses regarding Petitioner's whereabouts on the date of the crime; and counsel's failure to call R&K customers to confirm the time on their receipt which altered the robbery timeline.
>
> V.   Petitioner was denied due process and a fair trial by the suppression or non-use of known exculpatory DNA evidence that does not match him, and would plausibly lead to the identity of a perpetrator or perpetrators.

VI.   Substantive due process urges a polygraph examination for Petitioner and a highly suspect informant to aid a motion for new trial.

(Pet'r's Standard 4 Br., ECF No. 9-20, PageID.1597-1624.)   By unpublished opinion issued October 7, 2010, the Michigan Court of Appeals rejected all of Petitioner's challenges and affirmed his convictions.  (Mich. Ct. App. Op., ECF No. 9-20, PageID.1542-1549.)

Petitioner then filed a pro per application for leave to appeal in the Michigan Supreme Court raising the same six issues he had raised in the Michigan Court of Appeals.  By order entered March 8, 2011, the Michigan Supreme Court denied leave to appeal.  (Mich. Order, ECF No. 9-21, PageID.1637.)

About one year later, Petitioner filed a motion for relief from judgment in the Ottawa County Circuit Court.  (Pet'r's Mot for Relief from J., ECF No. 9-22, PageID.1768-1774.) In Petitioner's motion, he raised several new issues, paraphrased as follows:

VII.   Petitioner's federal and state constitutional rights were denied by ineffective assistance of trial and appellate counsel's omissions and commissions during either his trial or on his appeal of right, "good cause" and "actual prejudice" is subsumed by the predicate interest of both attorneys to provide Petitioner with the effective assistance of counsel warranting post-judgment relief.

VIII.   Defense counsel failed to subject the prosecution's case to a true adversarial testing of legalities on the subject of circumstantial and tainted evidence, and failure to investigate the case per se, Petitioner was denied the effective assistance of counsel when counsel failed to (a) hire a private investigator; (b) investigate the prosecution's witnesses and ascertain to what extent their testimony during trial would be reliable and credible; and (c) subpoena Petitioner's co-defendant as a witness who had eventually testified in his own defense and testified that Petitioner was not at the crime scene.

IX.   Petitioner was denied his rights to due process and a fair trial because of the prosecutor's misconduct, including (a) eliciting perjured testimony from witnesses; (b) vouching for the credibility of witnesses; (c) arguing facts not in evidence; (d) asserting the prosecutor's personal belief in Petitioner's guilt; and (e) withholding evidence that disclosed res gestae witnesses who witnessed the crime scene moments after the crimes were committed.

6

X.     Witnesses at Petitioner's trial recanted their testimony in affidavits that divulge they were offered deals and afraid of the police and deliberately fabricated their testimony to benefit their own personal interests; therefore, Petitioner should be granted a new trial.

XI.    The trial court impermissibly allowed the prosecutor to introduce evidence of another crime to establish motive and associate Petitioner to a gun which is not the murder weapon, Petitioner was never charged with the crime, Petitioner never possessed the gun.  No limiting instruction could mitigate the prejudice.

(*Id*.)  The trial court denied Petitioner's motion initially and then upon reconsideration.  Petitioner sought leave to appeal in the Michigan Court of Appeals and the Michigan Supreme Court.  Those courts denied leave by orders entered July 13, 2013, and December 23, 2013.  (Mich. Ct. App. Ord., ECF No. 9-26, PageID.1863; Mich. Order, ECF No. 9-27, PageID.1929.)  Petitioner timely filed his habeas petition on February 14, 2014.

II.     AEDPA Standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA).  The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."   28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams*, 529 U.S. at 381-382; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III.   404(b) evidence (Habeas Issue I)

Witness Dan Anderson testified that a couple of days before the Grand Haven robbery, his home was burgled. Mr. Anderson described several items that were missing including rolls of coins, a knife, and a handgun. Mr. Anderson identified the handgun that police dug up as the handgun that was taken from his home.

Prior to trial, the prosecutor moved for admission of Mr. Anderson's testimony under Michigan Rule of Evidence 404(b). (Mot. in Limine, ECF No. 9-4, PageID.350-353.) The prosecutor did not seek to admit the evidence to show that Petitioner committed the robbery, only to show where the gun came from and that neither the registered owner nor the rightful possessor of the gun were involved in the R&K robbery. The court permitted the testimony for those reasons. (Rule 404(b) Mot. Hr'g Tr., ECF No. 9-6, PageID.369-371.)

Petitioner claims that the evidence was offered to show that he had a propensity to commit crimes for the purpose of showing that he acted in conformity with that propensity in connection with the R&K robbery. Petitioner claims introduction of the home invasion evidence rendered his trial fundamentally unfair and violated his due process rights.

Petitioner raised this issue for the first time in his motion for relief from judgment. The trial court refused to consider the claim because Petitioner could have raised it during his direct appeal, but he did not.  (Ottawa Cty. Cir. Ct. Op., ECF No. 9-23, PageID.1850.)  The court concluded that Petitioner had failed to show cause for that failure, thus relief was barred.  (*Id.*, PageID.1850-1853.)

When a state-law default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982).  To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the state court enforced the rule so as to bar the claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim.  *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster*, 324 F.3d at 436-37; *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001); *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001).  In determining whether a state procedural rule was applied to bar a claim, a reviewing court looks to the last reasoned state-court decision disposing of the claim. *See Ylst*, 501 U.S. at 803; *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).  Here, the last reasoned state-court decision is the trial court's order resolving Petitioner's motion for relief from judgment.

There is no question that Petitioner failed to comply with the requirement to raise his post-judgment motion issues on direct appellate review; thus, he failed to follow the state procedural rule.  The state court expressly relied upon Petitioner's default in denying his claim.  It is also beyond dispute that the procedural rule is an adequate and independent ground for denying relief.  A rule is an adequate and independent ground when it was "firmly established and regularly

followed" at the time of the asserted procedural default. *Rogers v. Howes*, 144 F.3d 990, 992 (6th Cir. 1998) (citing *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)). Mich. Ct. Rule 6.508(D)(3) "was firmly established and regularly followed . . . and was an adequate and independent state ground for denying review." *Gates v. Hoffner*, No. 17-2198, 2018 WL 1614261, at *2 (6th Cir. Mar. 23, 2018) (citing *Simpson v. Johnson*, 238 F.3d 399, 407 (6th Cir. 2000)).

To overcome the procedural default bar, the petitioner must demonstrate either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536 (2006); *Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Hicks*, 377 F.3d at 551-52. In this instance, however, the Court will forego that analysis and simply address Petitioner's claim on the merits. Federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits. *See Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."), and *Nobles v. Johnson*, 127 F.3d 409, 423-24 (5th Cir. 1997) (deciding against the petitioner on the merits even though the claim was procedurally defaulted)). *See also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). Where, as here, the procedural default issue raises more questions than the case on the merits, the Court may assume without deciding that there was no procedural default or that Petitioner could show cause and prejudice for that default. *See Hudson*, 351 F.3d at 215-16; *Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999).

The extraordinary remedy of habeas corpus lies only for a violation of the Constitution.  28 U.S.C. § 2254(a).  As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions."  *Id.* at 67-68.  Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Id.* at 68.  State-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.  *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).  This approach accords the state courts wide latitude in ruling on evidentiary matters.  *Seymour*, 224 F.3d at 552 (6th Cir. 2000).

Further, under the AEDPA, the court may not grant relief if it would have decided the evidentiary question differently.  The court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts.  *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000).  Petitioner has not met this difficult standard.

There is no clearly established Supreme Court precedent that holds that a state court violates the Due Process Clause by permitting propensity evidence in the form of other bad acts evidence.  In *Estelle v. McGuire*, the Supreme Court declined to hold that the admission of prior acts evidence violated due process.  *Estelle*, 502 U.S. at 75. The Court stated in a footnote that,

because it need not reach the issue, it expressed no opinion as to whether a state law would violate due process if it permitted the use of prior crimes evidence to show propensity to commit a charged crime. *Id.* at 75 n.5. While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms. The Sixth Circuit has found that "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

Accordingly, considered on the merits, Petitioner's claim fails. He has not demonstrated that the state court's admission of the evidence regarding the prior home invasion is contrary to, or an unreasonable application of, clearly established federal law.

IV.   Prosecutorial Misconduct—Use of Known Perjured Testimony
      (Part of Habeas Issues I and II)

In the "supporting facts" section of ground one in the habeas petition, Petitioner closes with the phrase "use of known perjured testimony." (Pet., ECF No. 1, PageID.6.) The petition provides no further explanation of the issue other than that cryptic phrase. In Petitioner's response to Respondent's answer, he supplies two affidavits: one from Youlando Gunn, who swears that jailhouse informant witness, Anthony Wright, confided in Gunn that Wright intended to set-up Petitioner for the R&K robbery; and one from Petitioner's brother-in-law, Bradley Nelson, who swears that investigating Detective Tim Bulthuis promised to take care of Nelson's tickets if Nelson testified that the significant rainstorm occurred <u>after</u> Nelson dropped Petitioner at Darick's house, instead of <u>during</u> the time Nelson was with Petitioner. Presumably this is the "perjured testimony" knowingly presented by the prosecutor. Petitioner's claim regarding Nelson's testimony is also referenced in habeas ground II.

13

Petitioner presented the "perjured testimony" issue for the first time in his motion for relief from judgment.  Again, relief is barred by his procedural default; he failed to raise the issues on direct appeal and the state court concluded there was no "cause" for that failure.  Once again, however, it is simpler to address the merits of Petitioner's claim than it is to conduct the procedural default analysis.  Accordingly, the Court will address the issue on the merits.

The Supreme Court repeatedly has recognized that "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice.'"  *Giglio v. United States*, 405 U.S. 150, 153 (1972) (quoting *Mooney v. Holohan*, 294 U.S. 103, 112 (1935)).

> The knowing use of false or perjured testimony constitutes a denial of due process if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. In order to establish prosecutorial misconduct or denial of due process, the defendants must show (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false. The burden is on the defendants to show that the testimony was actually perjured, and mere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony.

*United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989) (citations omitted).  *See also Coe v. Bell*, 161 F.3d 320 (6th Cir. 1998).  Petitioner bears the burden of demonstrating that the testimony was actually perjured.  *Lochmondy*, 890 F.2d at 822.

### A.      Testimony of Anthony Wright

Witness Anthony Wright testified at Petitioner's preliminary examination that Petitioner had confessed to his participation in the R&K robbery.  (Prelim. Exam. Tr., ECF No. 9-2, PageID.309-334.)  Prior to testifying, Witness Wright had memorialized Petitioner's confession in writing.  (*Id.*)  At trial, however, Witness Wright had a change of heart.  He testified that everything in his written statement and everything in his prior sworn testimony was a lie.  (Trial Tr. Excerpt, Testimony of Anthony Wright, ECF No. 9-15, PageID.1143-1144.)  The prosecutor

14

grilled Wright about his change of heart.  The prosecutor laid the groundwork for a claim that Wright changed his testimony because he was afraid of the consequences of being a "snitch."

There can be no question that Anthony Wright provided false testimony; however, it is not clear whether he did so at the preliminary examination or the trial.  Importantly, Petitioner has not demonstrated that the prosecutor knew that the preliminary examination testimony—the only testimony that implicated Petitioner—was false.  Indeed, it is Petitioner's position that the testimony the prosecutor elicited from Witness Wright at the trial was true.

Petitioner has failed to show that the prosecutor knowingly used perjured testimony at the trial (or the preliminary examination).  Moreover, Petitioner has failed to show that the state court's resolution of this claim is contrary to, or an unreasonable application of, clearly established federal law.  He is, therefore, not entitled to habeas relief on this claim.

### B.      Testimony of Bradley Nelson

The timing of the R&K robbery could not be pinpointed with precision.  Mr. Karrel had spoken with someone on the phone at about 3:00 p.m. and Stephani returned to the store just after 3:30, so the prosecutor argued that the robbery occurred within that window of time.  Before that window, there had been a downpour.  Apparently, because it was easier for witnesses to connect the events of that day to the timing of the downpour than to a particular time on a clock, the prosecutor and defense counsel asked witnesses whether a particular event occurred before or after that downpour.

Bradley Nelson was one of the last witnesses to see Petitioner before the robbery occurred.  Nelson had taken Petitioner from Petitioner's home, where Petitioner had talked with his wife, to Darick's home.  To fix the time when Nelson dropped off Petitioner at Darick's home, the prosecutor inquired at the preliminary examination and at trial whether Nelson dropped

15

Petitioner off before or after the downpour.  Nelson testified at the preliminary examination and at trial that he dropped Petitioner off at Darick's house before the downpour.

In Bradley Nelson's affidavit, signed almost three years after the trial, he claims that, right before the trial, Detective Tim Bulthuis agreed to "take care of" Nelson's tickets if he testified that after Nelson dropped off Petitioner at Darick's house before the downpour.  (Nelson Affid., ECF No. 9-22, PageID.1848-1849.)  Nelson, in his affidavit, claims it actually rained hard while he was with Petitioner.  Nelson claims he lied at trial and his ticket was "taken care of by Detective Bulthuis as agreed."  (*Id.*)  Thus, Petitioner argues, Nelson's testimony was bought and perjurious.

The factual flaw in Petitioner's position is that Nelson testified months before the trial at Petitioner's preliminary examination that he dropped off Petitioner before the storm.  (Prelim. Exam., ECF No. 9-2, PageID.279.)  Petitioner has succeeded in showing that Nelson's sworn affidavit statement is inconsistent with Nelson's sworn testimony at the preliminary examination and at trial.  That does not show which of Nelson's sworn statements was perjurious nor does it establish that the prosecutor had any knowledge of the alleged perjury.  Moreover, it is noteworthy that the prosecutor's timeline was not necessarily rendered feasible or infeasible based on whether Nelson dropped Petitioner before, during, or after the downpour.  Petitioner has failed to show that he is entitled to habeas relief based on the prosecutor's knowing use of Nelson's allegedly perjurious testimony.

## V.   Prosecutorial Misconduct—*Brady* violation (part of Habeas Issue II)

Under *Brady v. Maryland,* 373 U.S. 83 (1963), "suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material, either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  *Brady*, 373

U.S. at 87.   The Supreme Court has held that "[t]here are three components of a true *Brady* violation: [t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."   *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).   Prejudice (and materiality) is established by showing that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."   *Id.* at 281 (quoting *Bagley*, 473 U.S. at 682); *see also Cone v. Bell*, 556 U.S. 449, 469-70 (2009).   "A reasonable probability is a probability sufficient to undermine confidence in the outcome."   *Bagley*, 473 U.S. at 682.

Petitioner contends that the prosecutor withheld exculpatory evidence.   The petition does not identify the exculpatory evidence that was allegedly withheld.   The petition only states that Petitioner learned of the evidence from his presentence investigation report.   Petitioner referenced possible *Brady* violations in his motion to remand and Standard 4 brief on direct appeal; however, he did not specifically reference evidence from his presentence investigation report.   The only time Petitioner made that claim was in his motion for relief from judgment.   In that motion, Petitioner claimed that the prosecutor withheld the following information:

> Several business employees/owners in the area were questioned about whether or not they heard or seen anything suspicious.   The only person contact that reported any suspicious activity was Jim Goldman.   He reported arriving at work around 10:30 a.m.   He said some time between 3-4, he was walking back from getting lunch and observed what he thought was a "suspicious vehicle."   He observed a black, unknown year/make pickup truck with a Harley Davidson sticker in the rear slide window leave the South side of 124 Washington.   He said what makes it suspicious was how the vehicle left the parking lot.   He said the truck backed out of the parking lot on the south side of the alley, across the alley, and into the lot near 124 Washington.   The truck then left at a high rate of speed through the alley.   Goldman did not see the driver of the truck nor did he have any type of video surveillance.

\*        \*        \*

> It was also noted that an additional witnessed [sic] believed he heard two gunshots. He reported receiving from his aunt, who was working at a stare downstairs at 3:57 p.m. telling him there had been a shooting across the street.  That is when this witness Ellingboe went and locked the front door to the store and apartment.

(Presentence Investigation Report Excerpt, ECF No. 9-22, PageID.1842-1843.)  Petitioner claims he was not aware of any of this information before he received the presentence investigation report (PSIR).

At Petitioner's sentencing hearing, he raised concerns that he was informed of these facts for the first time in the PSIR.  (Sentencing Hr'g, ECF No. 9-19, PageID.1536.)  Nonetheless, even though Petitioner referenced *Brady* on his direct appeal, this evidence is not identified in Petitioner's Standard 4 brief as evidence withheld in violation of *Brady*.  The Michigan Court of Appeals did not believe Petitioner raised the issue as a *Brady* issue on his direct appeal.  That court stated, "defendant does not identify any evidence that allegedly was withheld in this case . . . ." (Mich. Ct. App. Op., ECF No. 9-20, PageID.1545.)  As set forth below, Petitioner raised the issue in his Standard 4 brief as an example of counsel's ineffectiveness, i.e., counsel was constitutionally deficient because he failed to introduce this evidence at trial.  Thus, it appears Petitioner raised these issues as a *Brady* issue for the first time in his motion for relief from judgment.  The trial court refused to consider them because Petitioner had failed to raise them on his direct appeal.

Petitioner's procedural default precludes habeas review by this Court unless he demonstrates either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice.  *See House*, 547 U.S. at 536; *Murray*, 477 U.S. at 495; *Hicks*, 377 F.3d at 551-52.  Typically, *Brady* claims are not subject to procedural default analysis because the prosecution's suppression of material exculpatory evidence serves as the "cause" for defendant's failure to raise the issue.  *See Banks v.*

18

*Dretke*, 540 U.S. 668, 691 (2004); *Jones v. Bagley*, 696 F.3d 475, 486-487 (6th Cir. 2012).  Here, however, Petitioner was fully aware of the prosecutor's alleged suppression at the time of his appeal.  Accordingly, the suppression cannot excuse Petitioner's failure to raise the issue on appeal.  Nonetheless, Petitioner claims he can show "cause and prejudice" and "actual innocence" so as to avoid the procedural default bar.

With respect to "cause and prejudice," Petitioner offered to the trial court, and presumably offers to this Court, the ineffective assistance of his appellate counsel as cause for his procedural default.  In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

Here, even if appellate counsel performed unreasonably in failing to raise the *Brady* issue, counsel's failure had no effect on the court of appeals' disposition, because Petitioner, with full awareness of the issue, could have raised it, but did not raise it, in his Standard 4 brief.   The Sixth Circuit Court of Appeals recently considered the same issue in *Sheffield v. Burt*, 731 F. App'x 438 (2018):

> Sheffield's ineffective assistance claim fails.  An appellate attorney is not required to raise every conceivable issue.  *People v. Reed*, 198 Mich.App. 639, 499 N.W.2d 441, 445 (1993).  The failure to assert all arguable claims is not sufficient to overcome the presumption that counsel functioned as a reasonable appellate attorney in selecting the issues presented.  *Id*.  Here, appellate counsel raised a reasonable sufficiency of the evidence claim, for which Sheffield also advocated in his Standard 4 brief.  And as the Michigan trial court and the government note, Sheffield had the opportunity to raise any issues in his Standard 4 brief on direct appeal that he felt his appellate counsel should have raised.  He did not raise the issue.

*Sheffield*, 731 F. App'x at 442 (footnote omitted).  As this Court noted in *Tighe v. Berghuis*, No. 1:12-cv-1314, 2016 WL 5537287 (W.D. Mich. Sept 30, 2016), "Petitioner filed a 'Standard 4' supplemental brief and thus had the opportunity to bring any claims he desired on direct appeal . . . Petitioner therefore cannot show prejudice from appellate counsel's failure to raise particular issues on direct appeal."  *Id*. at *4.  For the same reason, Petitioner here cannot show prejudice.

Because Petitioner cannot show prejudice, his default bars review unless enforcing the bar will result in a fundamental miscarriage of justice.  Petitioner claims such a miscarriage of justice will occur if the procedural default bar is enforced here because he can show that he is actually innocent.   In *Schlup v. Delo*, 513 U.S. 298 (1995), the Court set forth the standard by which such claims must be judged:

> To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eye witness accounts, or critical physical evidence

> -- that was not presented at trial.  Because such evidence is obviously unavailable
> in the vast majority of cases, claims of actual innocence are rarely successful.

*Schlup*, 513 U.S. at 324.  Given the rarity of such evidence, the allegation of actual innocence has

been summarily rejected in virtually every case.  *Calderon v. Thompson*, 523 U.S. 538, 559 (1998).

This Court must determine whether Petitioner has demonstrated actual innocence by clear and

convincing evidence, such that his conviction represents a "fundamental miscarriage of justice."

*See Sawyer v. Whitley*, 505 U.S. 333, 339 (1992).  The undersigned concludes Petitioner has not

demonstrated his actual innocence.

The possibly "new" evidence offered by Petitioner consists of the following: (1) the

affidavit of Youlando Gunn, which merely confirms Anthony Wright's testimony at trial; (2) the

affidavit of Bradley Nelson, which, as explained above, is unconvincing and, even accepted as

true, does not foreclose Petitioner's participation in the crime; (3) the certainly not "new" statement

by Jim Goldman that a black pickup truck left the parking lot behind R&K Jewelry during the hour

the robbery likely occurred; and the also  not "new" statement that a neighbor may  have heard

shots around the time of the robbery.  This evidence is not clear and convincing and does nothing

to overcome the weight of the evidence showing that Darick participated directly in the robbery

and that Petitioner was with Darick at the time.  The "new" evidence also fails to overcome

Petitioner's own jailhouse confessions.  Because Petitioner has failed to show cause for his

procedural default or that he is actually innocent, the Court is barred from reviewing Petitioner's

*Brady* claim.

Even if the Court considered Petitioner's *Brady* claim on the merits, Petitioner

would not be entitled to relief.  Petitioner has failed to show any of the three components of a

*Brady* claim.  First, Petitioner has failed to show that the evidence was suppressed.  The initial

PSIR's "Description of the Offense" included statements regarding the initial police investigation

following the shootings.  Those statements are obviously taken from the police reports.  Petitioner

does not contend that the defense was denied the police reports.  Indeed, they were referenced

during the trial.

Petitioner has also failed to show that the evidence was exculpatory.  R&K Jewelry

is in the commercial district in downtown Grand Haven.  The fact that a black pickup truck left a

parking lot in the downtown shopping district at a high rate of speed during the hour that the

robbery occurred does not make it less likely that Petitioner was with his brother when Darick

robbed the store.  Similarly, evidence that someone across the street thought they heard two shots

and, at 3:57 p.m. when they learned a shooting had indeed occurred, locked their doors, does not

make it less likely the Petitioner was with his brother when Darick robbed the store.  This evidence

was not absent from the trial because it was suppressed, it was absent from the trial because it was

immaterial.

Finally, Petitioner has failed to show any prejudice.  Petitioner offers nothing to

show that the result would have been any different if the jury had learned of the black pickup truck

or the person across the street who heard the shots.   The Court is barred from considering this

claim because of Petitioner's procedural default; but, even absent the bar, Petitioner is not entitled

to habeas relief.

VI.    Sufficiency of the Evidence (habeas issue III)

A § 2254 challenge to the sufficiency of the evidence is governed by the standard

set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is

"whether, after viewing the evidence in the light most favorable to the prosecution, any rational

trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  This

standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in

testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). This standard erects "'a nearly insurmountable hurdle'" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2008) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

The Michigan Court of Appeals resolved Petitioner's sufficiency challenge as follows:

> We review a challenge to the sufficiency of the evidence *de novo* by viewing the evidence presented at trial in a light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crimes charged were proven beyond a reasonable doubt. *People v. Harrison*, 283 Mich.App. 374, 377-378, 768 N.W.2d 98 (2009).
>
> The elements of first-degree premeditated murder are an intentional killing of a human with premeditation and deliberation. *People v. Unger*, 278 Mich.App. 210, 223, 229, 749 N.W.2d 272 (2008). "The elements of first-degree felony murder are (1) the killing of a human being, (2) malice, and (3) the commission, attempted commission, or assisting in the commission of one of the felonies enumerated in MCL 750.316(1)(b)." *People v. Watkins*, 247 Mich.App. 14, 32, 634 N.W.2d 370 (2001). Robbery is a listed felony. MCL 750.316(1)(b). "The elements of armed robbery are (1) an assault and (2) a felonious taking of property from the victim's person or presence (3) while the defendant is armed with a dangerous weapon."

*Watkins*, 247 Mich.App. at 33, 634 N.W.2d 370.  A person who aids and abets in the commission of an offense may be convicted and punished as a principal.  *People v. Moore*, 470 Mich. 56, 63, 679 N.W.2d 41 (2004).  The elements that must be proven to convict a defendant as an aider and abettor are (1) the crime charged was committed by the defendant or some other person, (2) the defendant aided and abetted the commission of the crime, and (3) the defendant intended to aid the charged offense and knew that the principal intended to commit the charged offense or the charged offense was a natural and probable consequence of the commission of the intended offense.  *Id*. at 67-68, 679 N.W.2d 41; *People v. Robinson*, 475 Mich. 1, 15, 715 N.W.2d 44 (2006).

Defendant does not dispute that any of the crimes occurred or that codefendant Darick Anderson committed them.  Rather, he focuses on the lack of physical and eyewitness evidence connecting him to the crimes, the inconsistent witness testimony connecting him with Darick on the day of the offense, inmate Anthony Wright's recantation of his prior testimony, and the lack of credibility of Darnell Barnes, another jail inmate.  However, circumstantial evidence is sufficient to prove the elements of a crime and all conflicts in the evidence must be resolved in favor of the prosecution.  *Unger*, 278 Mich.App. at 223, 749 N.W.2d 272.  Further, this Court may not "interfere with the jury's determinations regarding the weight of the evidence and the credibility of the witnesses."  *Id* at 222, 749 N.W.2d 272.

Barnes testified that defendant confessed to him that he shot the victims.  Wright previously testified that defendant confessed his participation in the crimes but recanted his prior testimony at trial.  Wright admitted that personal items were stolen from his cell after he testified against defendant at the preliminary examination, and that he thereafter feared for his family's safety.  The jury could have determined, then, that Wright's recantation was motivated by fear of reprisal. Patricia Rogers's testimony placed defendant with codefendant Darick Anderson in Muskegon Heights shortly after a heavy rainstorm, which was approximately 2:45 p.m., according to witness testimony, which would have given defendant and Darick sufficient time to reach Grand Haven, a 15-minute drive, to commit the crimes between 3:00 and 3:30 p.m.  The jury was free to reject defendant's wife's estimation of when defendant left their home that afternoon, which she claimed was around 3:10 p.m.  Viewed in the light most favorable to the prosecution, the evidence was sufficient to enable the jury to find beyond a reasonable doubt that defendant committed the crimes with codefendant Darick Anderson and was guilty as either a direct principal or as an aider and abettor.

(Mich. Ct. App. Op., ECF No. 9-20, PageID.1543-1544.)

Although the court of appeals cited state authority for the sufficiency standard it employed, the standard was the same as the *Jackson* standard.  Thus, it cannot be said that the state appellate court applied the wrong standard.  Moreover, the state court applied the standard

24

reasonably.  It reviewed the evidence against the elements of the crimes charged and concluded that the evidence, viewed in a light that favors the prosecution, is sufficient to establish the elements of the crime.

Petitioner attacks the state court's resolution of the sufficiency issue by inviting the Court: (1) to view the evidence in a light that favors him; or (2) to require that the prosecutor provide eyewitness testimony that Petitioner was at the scene of the crime when it occurred.  The Court rejects both invitations.  Viewing the evidence in a light that favors Petitioner flies in the face of the *Jackson* requirement that the evidence be considered in a light that favors the prosecutor.  Requiring the prosecutor to supply an eyewitness to Petitioner's presence at the crime scene ignores the *Jackson* requirement to respect the jury's right to infer ultimate facts from the circumstantial evidence presented.  Moreover, Petitioner's contention that no evidence places him at the scene of the crime conveniently ignores his confessions to witnesses Wright and Barnes.

Petitioner has failed to overcome the double deference owed to the state courts' resolution of the sufficiency issue.  Petitioner has failed to demonstrate that the Michigan Court of Appeals determinations of fact are unreasonable on this record.  He has likewise failed to show that the Michigan Court of Appeals' conclusion—that the evidence against Petitioner was sufficient—is contrary to, or an unreasonable application of, *Jackson*.  Accordingly, he is not entitled to habeas relief.

VII.    Ineffective Assistance of Counsel (habeas issue IV)

Petitioner claims that his trial counsel and his appellate counsel rendered ineffective assistance in violation of the Sixth Amendment.  For the reasons set forth above, Petitioner cannot show prejudice from appellate counsel's alleged failures to raise issues on appeal.  Petitioner had the opportunity to raise the issues in his Standard 4 brief and he did not.  With respect to trial

counsel, Petitioner raises two concerns: (1) counsel did not prepare for trial; and (2) counsel did

not investigate and call a witness that Petitioner wanted to be present.   (Pet., ECF No. 1,

PageID.10.)

Petitioner specifically raised the failure to prepare for trial and the failure to

investigate and call Petitioner's witness in his Standard 4 brief.  The Michigan Court of Appeals

rejected both claims:

> Second, defendant asserts that trial counsel was ineffective for failing to prepare
> for trial and for failing to adequately familiarize himself with the case and pursue
> leads provided by defendant.  Although a defense attorney's failure to reasonably
> investigate a case can constitute ineffective assistance of counsel, *People v.
> McGhee*, 268 Mich.App. 600, 626, 709 N.W.2d 595 (2005), defendant here does
> not specify what counsel was unfamiliar with or what leads he failed to pursue.
> Thus, defendant has failed to show either the requisite deficient performance by
> counsel or any resulting prejudice.  *Hoag*, 460 Mich. at 6, 594 N.W.2d 57; *People
> v. Caballero*, 184 Mich.App. 636, 640, 459 N.W.2d 80 (1990).
>
> *          *          *
>
> Eighth, defendant asserts that trial counsel was ineffective for failing to call
> witnesses to bolster defendant's alibi, or to do so through testifying witness Bradley
> Nelson.[4]  Although defendant contends that "Rock" would have testified that he
> was with defendant from 10:30 a.m. to 1:15 p.m., because the evidence showed that
> the crimes were committed later in the afternoon, Rock's testimony would not have
> aided an alibi defense.  Thus, counsel's failure to call this witness did not deprive
> defendant of a substantial defense.
>
> [4] Defendant does not specify the nature of his alibi other than to cite cell phone records that placed
> him in Muskegon Heights at 3:40 p.m.

(Mich. Ct. App. Op., ECF No. 9-20, PageID.1546-1547.)

Petitioner offers nothing in his petition or his response to Respondent's answer to

cast any light on his overly general and conclusory contention that counsel failed to prepare for

trial.  His statement of the habeas issue is, essentially, his entire argument:  "counsel failed to

prepare for trial . . . ."  As noted by the court of appeals, turning to Petitioner's briefs on direct

appeal does nothing to further illuminate his "general failure to prepare" claim in that court.

Petitioner has failed to demonstrate that the state appellate court's determinations with regard to counsel's general lack of preparation or failure to make use of "Rock's" testimony are contrary to, or an unreasonable application of, *Strickland*.    Without something more Petitioner's claim fails.

Perhaps Petitioner intended that "something more" to be the several other allegations of ineffectiveness in his Standard 4 brief.    Petitioner raised many other ineffective assistance of counsel claims.    The Michigan Court of Appeals rejected those as well:

> Defendant first argues that trial counsel was ineffective for failing to investigate and learn of the prosecutor's tendency to withhold exculpatory evidence.    Because defendant does not identify any evidence that allegedly was withheld in this case, he has not satisfied his burden of establishing the factual predicate for his claim.    *People v. Hoag*, 460 Mich. 1, 6, 594 N.W.2d 57 (1999).    To the extent defendant refers to the prosecution's alleged failure to discover exculpatory evidence, as previously discussed in section II(A), the prosecutor has no such duty.    Thus, there is no merit to this claim.

> *     *     *

> Third, defendant asserts that trial counsel was ineffective for failing to file a motion for a change of venue based on pretrial publicity.    However, defendant has not provided any evidence of the pretrial publicity that this case received, or any evidence suggesting that the jurors were not impartial.    Thus, he has not established the factual predicate for this claim.    *Hoag*, 460 Mich. at 6, 594 N.W.2d 57.    Further, by failing to provide any supporting argument for his position, he has abandoned review of this claim.    *Coy*, 258 Mich.App. at 19-20, 669 N.W.2d 831.    Accordingly, this claim cannot succeed.

> Fourth, defendant asserts that trial counsel was ineffective for failing to file a bill of particulars.    However, a bill of particulars was unnecessary because the preliminary examination adequately informed defendant of the charges against him.    *People v. Harbour*, 76 Mich.App. 552, 557, 257 N.W.2d 165 (1977).

> Defendant also asserts that counsel was ineffective for failing to file a motion for discovery, but the record discloses that such a motion was filed.    Defendant's argument appears to be focused more on counsel's non-use of the DNA evidence on the office safe from which he was excluded as a donor.    Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy.    *People v. Dixon*, 263 Mich.App. 393, 398, 688 N.W.2d 308 (2008).    The failure to call a witness or present other evidence can constitute ineffective assistance of counsel only when it deprives the defendant of a

27

substantial defense. *People v. Payne*, 285 Mich.App. 181, 190, 774 N.W.2d 714 (2009). A substantial defense is one that might have made a difference in the outcome of the trial. *People v. Chapo*, 283 Mich.App. 360, 371, 770 N.W.2d 68 (2009).

The absence of defendant's DNA on the office safe does not mean that defendant was not at the store, only that he did not touch the safe or did not leave DNA material. Because neither party presented the evidence, defense counsel was able to argue that there was no physical evidence of defendant's presence at the crime scene. Defense counsel's decision not to present the negative DNA results was reasonable trial strategy, which did not deprive defendant of a substantial defense. This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight. *Payne*, 285 Mich.App. at 190, 774 N.W.2d 714. Accordingly, this ineffective assistance of counsel claim is without merit.

Fifth, defendant asserts that trial counsel was ineffective for failing to object to Herkie Jewell's repeated hearsay testimony regarding statements made by codefendant Darick Anderson. Defendant contends that the statements unfairly prejudiced him and violated his right of confrontation. A decision not to object to evidence can be sound trial strategy. *Unger*, 278 Mich.App. at 242, 253, 749 N.W.2d 272. Here, defendant has not overcome the presumption that defense counsel reasonably allowed Jewell to testify regarding Darick Anderson's statements as a matter of trial strategy, in order to deflect culpability from defendant and portray Darick as the person with knowledge of the store, and then idea of how to commit the crimes. Indeed, this was consistent with the defense theory at trial. Therefore, defendant has failed to establish that counsel was ineffective. *Payne*, 285 Mich.App. at 190, 774 N.W.2d 714.

We also reject defendant's argument that Darick Anderson's statements violated the Confrontation Clause. "The Confrontation Clause of the Sixth Amendment bars the admission of testimonial hearsay unless the declarant is unavailable and the defendant has had a prior opportunity for cross-examination." *Id*. at 197, 774 N.W.2d 714, citing *Crawford v. Washington*, 541 U.S. 36, 68 (2004). Statements are testimonial when they are made under circumstances that would lead an objective declarant reasonably to believe that the statement would be available for use in a later trial or criminal prosecution. *People v. Lonsby*, 268 Mich.App. 375, 377, 707 N.W.2d 610 (2005), citing *Crawford*, 541 U.S. at 51-52. In this case, Darick made the challenged statements in the presence of defendant and Jewell. There is no indication that he expected the statements to be used in a later trial or criminal prosecution. Thus, the statements are non-testimonial and their admission does not violate the Confrontation Clause.

Sixth, defendant asserts that trial counsel was ineffective for failing to learn of the prosecution's deal with Jewell in exchange for his testimony. However, the record fails to disclose that any deal existed, the prosecution explicitly denies any such deal, and defendant has not provided any evidence of any deal. Thus, defendant

has failed to establish the factual predicate for this claim. *Hoag*, 460 Mich. at 6, 594 N.W.2d 57.

Seventh, defendant asserts that trial counsel was ineffective for failing to effectively impeach witnesses Jewell, Rogers, Barnes, and Wright. The record discloses that counsel attempted to impeach each of these witnesses. Defendant does not explain how defense counsel's cross-examination could have been more thorough. Again, therefore, defendant has failed to establish the factual predicate for his claim.

*   *   *

Ninth, defendant asserts that counsel was ineffective for failing to call witnesses to rebut the prosecution's timeframe for when the crimes occurred. However, the witness who heard gunshots did not specify what time he heard them, only that he received a call at 3:57 p.m. informing him of the store shootings. Another witness told the police that he saw a suspicious person in a black truck leave the scene sometime between 3:00 and 4:00 p.m. Additionally, the police discovered that the time stamp on the store's credit card machine was 30 minutes fast after a company representative explained to an officer the machine's internal verification process. Thus, contrary to what defendant argues, the evidence indicated that the last credit card purchase was at 3:01 p.m., not 3:31 p.m. Defendant does not suggest that the police investigation was flawed. Therefore, defendant has failed to show that any of the alleged witnesses would have aided in rebutting the prosecution's timeframe. Accordingly, defense counsel was not ineffective for failing to call these witnesses.

Tenth, because we have not found any instances in which trial counsel was ineffective, defendant's assertion that counsel's cumulative failures denied him a fair trial lacks merit. *Unger*, 278 Mich.App. at 258, 749 N.W.2d 272.

(Mich. Ct. App. Op., ECF No. 9-20, PageID.1545-1548.) Of these, only Petitioner's first, third, fourth, and sixth call into question trial counsel's preparation for trial.

To the extent Petitioner was elaborating on the "general failure to prepare" claim in his first, third, fourth, and sixth assertions of counsel's ineffectiveness, the state appellate court's resolutions of those claims reveal them to be factually and legally devoid of merit. The record does not support Petitioner's claims that the prosecutor withheld evidence, that a change of venue was appropriate, that Petitioner's notice of the charges was inadequate, that counsel failed to pursue discovery, or that there was a "deal" between witness Herkie Jewell and the prosecutor. The state appellate court's determinations regarding those claims are well-supported in the record.

Petitioner offers no facts or legal argument that might undermine those determinations because he offers no facts or argument at all.

Petitioner's further assertion that counsel inexplicably ignored a defense when he did not call the state police DNA expert at trial is similarly without merit. Counsel argued that the investigators "DNA'd this stuff . . . they didn't get anything." (Trial Tr. I, ECF No. 9-12, PageID.532-533); *see also* (*Id*. at 550; Trial Tr. V, ECF No. 9-18, PageID.1442). Witness Robert Hackerd of the state police crime lab testified that the DNA tests turned up nothing. (Trial Tr. II, ECF No. 9-13, PageID.863-864.) To focus more attention on the absence of DNA would have simply invited expert comment on all the reasons that one would not necessarily expect to find DNA at the scene. This Court has noted the validity of the often-recited aphorism: "*the absence of evidence is not the evidence of absence*." *Nofsinger v. Comm. of Soc. Sec.*, No. 1:09-cv-29, 2010 WL 2651600 at *2 (W.D. Mich. July 1, 2010) (emphasis in original, footnote omitted). The Sixth Circuit has offered a refinement of the saying that supports counsel's approach here: "[a]n *explained* absence of evidence . . . is not evidence of absence." *Presnall v. Huey*, 657 F. App'x 508, 512 (6th Cir. 2016) (emphasis supplied). Thus, the state appellate court's conclusion that counsel's strategy in dealing with the DNA evidence was reasonable is also well-supported in the record and entirely consistent with *Strickland*.

Perhaps in complaining about counsel's general failure to prepare for trial, Petitioner is referring to the elaborations in his motion for relief from judgment. In that motion Petitioner challenged counsel's failure to hire a private investigator or expert witness, failure to investigate the prosecution's witnesses to assess their reliability and credibility, and failure to subpoena Darick Anderson. The trial court would not consider those claims because Petitioner had failed to show cause for failing to raise them on his direct appeal. Those claims, therefore, are

30

barred by Petitioner's procedural default and, as explained above, Petitioner has failed to show "cause and prejudice" or "actual innocence" to avoid the bar.

Accordingly, Petitioner's contention that his appellate and trial counsel were ineffective is without merit.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.* at 467.  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, I have examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong.  Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

### Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied.

Dated:  August 31, 2018                                            /s/ Ray Kent
                                                                    United States Magistrate Judge

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).